## GRABILL *v.* BARR.

The mark of an alleged testator affords no criterion by which proof of it can be made, and is not recognised by our act of Assembly as a legitimate execution of a last will and testament.

Where a testator does not sign his name to his will, the sixth section of the act of the 8th of April, 1833, requires that two witnesses should prove, that the extremity of his sickness was so great that he was thereby prevented from writing his name; and the substitute for his name written by himself, is his name written at the end of his will by some person at his request, and this request must also be proved by two witnesses.

Where a testator does not sign his name to his will, unless it be proved by two witnesses, that the extremity of his sickness was so great that he could not have written his name if he had made an effort to do so, and that some other person, in his presence and by his express direction, signed his name to the paper, such instrument, in the language of the act of Assembly, is of no effect.

A paper purporting to be a schedule of advancements made by a testator to some of his children, which was not mentioned or referred to in the will, and which was made at a different time, forms no part of the will, and can have no effect on the question of admitting the instrument to probate on the proof of its execution.

Every man is presumed to possess a sound mind until the contrary be shown; and it is incumbent on the party alleging insanity, to establish the fact. If general insanity be proved, it is presumed to continue until a recovery be shown; and the party alleging a restoration to sanity, must prove his allegation. Insanity, at the time of making the alleged will, must be proved in order to render the instrument void.

In error from the Common Pleas of Lancaster county.

*Nov.* 30. This was an issue of *devisavit vel non*, directed to try whether an instrument in writing, dated the 12th day of August, 1843, was, or was not, the last will and testament of Daniel Keeports; and in which, John Barr, the defendant in error, was plaintiff, and Levi Grabill and Fanny Grabill, the plaintiffs in error, were defendants. The plaintiff averred, that the instrument was the will of Daniel Keeports; the defendants denied the averment.

The questions raised in the court below, on the trial of the issue before Lewis, P. J., were on the points of the legal execution of the will, the sanity of the testator at the time of the alleged execution, and whether a paper purporting to be a schedule of advancements made by the testator to some of his children, which was offered in evidence by the defendants, objected to by the plaintiff, and admitted by the court, was part of the alleged will, and to be taken into the account in distributing the estate, if the instrument were established as a will, for the purpose of equalizing the shares of the children. But the main question raised and decided here was on the point, whether the instrument averred to be the will of Daniel Keeports was executed according to the directions of the sixth section of the act of the 8th of April, 1833. On this

point, the material facts given in evidence are stated in the opinion of this court. As to the question of the testator's sanity or capacity to make a will, at the time of making his alleged will, the evidence was contradictory.

LEWIS, P. J., charged the jury thus:—

"It is sufficiently shown, that Daniel Keeports executed the paper. The question therefore depends upon his capacity to make a will at the time he affixed his mark to the paper. In order to render such an act valid, the alleged testator must possess, at the time, a 'soundly disposing mind and memory.' A degree of memory is necessary to enable a man to make a valid disposition of his property; although the memory be impaired by age, and not so good as it had been at an earlier period of life, still it may be sufficiently sound to enable a man to dispose of his property. Few men at an advanced age find their memory as good as in youth. A man must be able to 'take a view of his estate and of his family to consider the state of his affairs and of his connections;' 17 Serg. & Rawle, 448; and to reflect upon them to constitute a disposing capacity. It has been held that he must have 'sufficient understanding to dispose of his estate with judgment and discretion;' 8 Watts, 70. After all it must be left to the jury to decide whether, upon the whole evidence, the testator was possessed at the time of execution, of a 'soundly disposing mind and memory.' If he was so, in this case, the verdict should be for the plaintiff. If not, then it should be for the defendants. It is a fact for the decision of the jury.

"Age, deafness, disease, weakness, and even blindness, (although the blindness in this case did not occur until after the execution,) would not singly or together invalidate an instrument purporting to be a will; but these conditions of body and mind are for the consideration of the jury, and if from these causes, and their tendency to impair the understanding, the jury should be satisfied that the testator was not possessed of a sound and disposing mind and memory at the time of executing the paper, they would be justified in so deciding.

"The advancements will not be taken into the account, in distributing the estate, if the paper be established as a will; but the supposed injustice of such a disposition, by which one of the sons, or those who represent him, will receive an equal share of the estate, without regard to the advancements of $3515 47 already received, will not invalidate the instrument. The case must be determined by a decision upon the soundness of his mind. Every

man, if possessed of a disposing capacity, has a right to dispose of his estate as he pleases; to give all to one of his children, and to exclude the rest if he should think proper.

" Opinions of witnesses are admitted in evidence, but the witnesses should be examined touching the reasons for their opinions; and unless sufficient reasons are given, their opinions are entitled to but little weight; for it is the judgment of the jury, upon the whole evidence, that must, in the end, determine the case.

" In deciding this question, it is proper that the jury should be governed by the rules of law. Every man is presumed to possess a sound mind, until the contrary be shown; and it is incumbent on the party alleging insanity to establish the fact. If general insanity be proved, it is presumed to continue until a recovery be shown; and the party alleging a restoration to sanity must prove his allegation. Insanity at the time of making the supposed will must be shown, in order to render the instrument void."

To this charge, the defendants excepted before verdict. The jury found for the plaintiff; whereupon the defendants sued out this writ, and assigned the following errors here:

1. The court erred in charging the jury that the will was sufficiently proved to have been executed, and in putting the whole question on his capacity to make a will at the time he made his mark.

2. In charging that the advancements would be excluded, but that such exclusion would not invalidate the will, when, in truth, without making the paper of advancements a part of the will, the whole intention of the testator, as shown in writing and expressed in his instructions to the scrivener in drawing the will, would be defeated.

3. In leading the jury to believe that the intention of the testator was to exclude the advancements, when the fact was just the reverse.

4. In charging " that insanity at the time of making the supposed will must be shown in order to avoid it," when in this case previous insanity had been shown, and the court should have charged that that was sufficient to avoid the will, unless " *sanity at the time of making the paper*" had been shown.

*N. Ellmaker* and *Stevens*, for plaintiff in error.

*Franklin* and *Parke*, contrà.

*Dec.* 8. COULTER, J.—The issue, as stated in the paper books,

is as follows : "The plaintiff avers that the instrument of the 12th of August, 1843, is the last will and testament of Daniel Keeports; defendants plead that it is not."

The issue involves the legal execution of the will as well as the sanity of the testator at the time of its alleged execution. The court instructed the jury as follows : "It is sufficiently shown that Daniel Keeports executed the paper. The question, therefore, depends upon his capacity to make a will at the time he affixed his mark to the paper," and this is assigned as the first error.

In both of the countries from which we have derived many of our principles of jurisprudence, there was a marked tendency to depart from the statutory provisions regulating the execution of wills. In the history of Roman jurisprudence this tendency was conspicuous, so much so, that one of the novels of Theodosius the Second, after reciting the mode of execution prescribed in the ancient law, proceeds to state that, "the ignorant presumption of posterity had changed the cautious rule of the ancient law," and re-enacts its substantial provisions. The *Lex Cornelia Testamentaria* was designed to recall the practice to the rule prescribed, and finally the legislation of Justinian simplified the mode of proof and attestation, and carefully guarded their execution.

In England, the deviations from the forms of attestation and proof, prescribed in the statute of 29th Charles the Second, c. 3, § 5, are emphatic and remarkable, and are familiar to the profession. This statute was itself, so far as it regarded the execution of wills, intended to reform the departure from statutory provisions, and guard with new securities the mode of authentication. The wide departure from the statute of Charles the Second, since its enactment, was the occasion of a report from the real property commissioners in England in 1833, in which the enactment of provisions somewhat similar to our statute of the same year is recommended. In Pennsylvania, very great latitude was allowed in departing from the statute. Our judges were seduced by the authority and sanction of the English courts, in sustaining the deviations from the statute of Charles the Second, until with us it became an evil of much magnitude, and was a matter of some uncertainty even in the profession, as to the extent to which inchoate writings or memoranda, left by a decedent, might or might not be his last will and testament. In this posture of the matter, the act of Assembly of the 8th of April, 1833, was enacted, the sixth section of which provides: "That every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his

last sickness, shall be signed by him at the end thereof, or by some person in his presence, and by his express direction, and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses, otherwise, such will shall be of no effect." Thus, a plain and simple form of execution is provided, easily understood by the unlearned as well as the learned; and it is of the highest importance to society that it should be preserved. The strong ligament formed by social ties and natural kindred, as well as the right of dominion over property which civilized nations sanction and secure, induces a feeling in all classes of society to favour the practice of making wills. But at the same time, our statute of distributions is so just, and the facilities of imposition upon a weak or illiterate person are so great, that the utmost certainty which human laws can provide, ought to be attained, before an instrument of that nature is allowed to displace the just provisions of the general law.

The question then occurs, was the paper alleged to be the will of Daniel Keeports, executed according to the wise and salutary directions of the statute? Henry Carpenter, one of the attesting witnesses, testifies that the deceased *said* he could not write, he was too weak. The witness does not say that he heard the deceased request any person to write his name at the bottom of the will. He merely saw him making his mark opposite the seal. He does not testify that he heard the deceased, or any one else, call the paper a will. It was not read while he was in the room. Christian Hess, the other witness, says, I saw Daniel Keeports put his mark there. I put his name there by his request. This witness proved that the deceased could write, and that he lived two or three weeks afterward. The first witness said, that deceased told Squire Hess, when he asked him to sign his name, that he was too weak. That was all the witness heard deceased say. Squire Hess had requested him to act as a witness. This comprises the whole proof of the execution of the instrument. From any thing that Carpenter testifies, the deceased might have thought it was a deed or some other instrument. It was established that he was a person who could write, and that he made his mark. It is testified by Carpenter, that when Hess requested him to write his name, he said he was too weak. But neither of the witnesses testify that the extremity of sickness was such that he could not write his name. They say nothing on that subject. It might be inferred, in the absence of all proof to the contrary, that if he was able to make his mark, he could have written his name. At all events, the act of Assembly

2 P

requires that two witnesses should prove that the extremity of his
sickness was so great that he was thereby prevented from writing
his name.    That proof is absent in this case.    He did not make an
effort.  A mark affords no criterion by which proof of it can be
made, whereas the signature even of a man wasted by disease,
although his hand may tremble and vibrate, has some resemblance
to what it was in a state of health; like the worn features of a dying
man, which still bear traces of what they were in his vigour.    The
mark, although it was held sufficient under the English statute, is
not recognised by our act of Assembly, and the substitute for it is,
that the testator shall request some person to write his name, and
that request must be proved by two witnesses.    In this case only
one witness, Christian Hess, proves that fact.    The proof, there-
fore, required by the statute, is deficient in two of the important
ingredients required.    It is not proved by two witnesses that the
extremity of his last sickness was such that he could not have writ-
ten his name if he had made the effort; and if it had been so
proved, the attestation is not in evidence by two witnesses: to
wit, that some other person, in his presence, and by his express
direction, signed his name to the paper for him.    The instrument,
therefore, in the language of the act of Assembly, is of no effect.
Cavett's Appeal, 8 Watts & Serg. 21; Stricker v. Groves, 5 Whart.
386; Dunlop v. Dunlop, 10 Watts, 153, are strong authorities on
this point.

The legislative and judicial mind have met on this subject; and
if deviations from the statute on account of apparent hardship in
particular cases, (which in fact constitutes ignorant or careless in-
dividuals the law-makers in the community,) are disallowed, and if
the sum of proof required by the act of Assembly is enforced by
the judiciary, the clause in the act which prescribes the form of exe-
cution and attestation, will in process of time become as familiar
as household words to the community, and the last hours of life
will in some degree be softened by the certainty which will rest on
the disposition of property by will.

The second and third errors are not sustained.

In the opinion of this court, the paper purporting to be a sche-
dule of advancements made by the alleged testator to some of his
children, did not form part of the alleged will.    The paper of ad-
vancements is not mentioned or referred to in the will, was made
at a different time, and can have no effect on the question of admit-
ting the instrument to probate, or the proof of its execution.

The fourth error assigned would seem to have been founded on

some misapprehension.  In the judgment of this court, the law on the subject of insanity was correctly stated by the court below, in the whole paragraph, taken together, from which a single sentence is extracted in the assignment.

The judgment of the court below is reversed, for the first error assigned, and a *venire de novo* awarded.