## Girard Trust Co., Executor, *v.* Page et al., Appellants.

*Wills—Probate—Signature—Cross—Act of June 7, 1917, section 3, P. L. 403.*

1. Under section 3 of the Act of June 7, 1917, P. L. 403, an express request that another sign testator's name is unnecessary; authority to sign it may be inferred from the fact that testator saw the name written and then signified his approval of the act by placing his mark under the signature.

*Wills—Probate—Undue influence—Confidential relation—Evidence—Meeting burden of proof.*

2. The principal beneficiary under the will of a testatrix meets the burden of proving absence of undue influence by proof that she had taken care of decedent for years, that testatrix had asked the legatee to stay with her until she died, promising to make a will in the legatee's favor, that on the latter's stating that a verbal promise was insufficient, testatrix called in her attorney who prepared the will, which was executed in the presence of the attorney, and the testatrix's physician, without the legatee being present in the room when it was signed.

*Practice, C. P.—Instructions to disagreeing jury.*

3. A judgment on a verdict will not be reversed on account of alleged improper instructions to a jury which reported difficulty in agreeing, where it appears that the trial judge told them that if there was a small minority standing out, it was the duty of the minority to scrutinize the evidence carefully and make very sure they were right before taking an obstinate stand, but did not attempt to usurp the functions of the jury nor compel them to agree against their conscience or convictions.

Argued December 2, 1924. Appeal, No. 132, Jan. T., 1925, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1923, No. 4526, on verdict for plaintiff, in case of Girard Trust Company, executor under alleged will of Kate Winberg, deceased, v. Howard W. Page et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Issue to determine validity of will.    Before AUDEN-RIED, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff.    Defendants appealed.

*Errors assigned* were, inter alia, refusal of defendant's request for judgment n. o. v., and instructions to jury, referred to in opinion of Supreme Court, quoting them.

*Grover C. Ladner,* with him *Henry J. Rebman* and *Henry Spalding,* for appellants.—The paper offered for probate was not duly executed as required by law: Stricker v. Groves, 5 Wharton 386; McClure v. Redman, 263 Pa. 405; Deer v. Greenwalt, 76 Pa. 239; Asay v. Hoover, 5 Pa. 21; Grabill v. Barr, 5 Pa. 441; Maginn's Est., 278 Pa. 89.

The court below erred in not holding as a matter of law that the burden of proof to overcome the presumption of undue influence was not met by the proponents of the will: Cuthbertson's App., 97 Pa. 163; Yardley v. Cuthbertson, 108 Pa. 395; Uhler's Est., 29 Pa. Dist. R. 736.

The learned judge erred in his remarks to the jury requesting further instruction.

*Reynolds D. Brown,* with him *Charles J. Biddle,* for appellee.—The will of Kate Winberg, deceased, was duly executed in accordance with section 3 of the Wills Act of June 7, 1917, P. L. 403; Picconi's Est., 4 Pa. D. & C. R. 245; Novicki v. O'Mara, 280 Pa. 411.

The court below did not err in leaving the jury to determine whether Anna Deacon had sustained the burden of proof upon her to show that testatrix, Kate Winberg, was not unduly influenced by Anna Deacon in the execution of the will.

The learned judge did not err in his further instruction to the jury.

OPINION BY MR. JUSTICE FRAZER, January 5, 1925:

Kate Winberg died February 10, 1922, at the age of 84, leaving a will executed four months previous to her death, which was duly offered for probate. A caveat filed alleged the writing was not executed as required by statute, that testatrix lacked mental capacity to make a will, and that it was procured by improper influence exercised by the principal beneficiary. After hearing before the register, an issue was granted to the common pleas to try the disputed questions. The jury concluded the will was duly executed; that testatrix had sufficient mental capacity to make a will, and that no improper influence was exercised over her. The contestants who were the heirs of decedent and beneficiaries under an earlier will, revoked by the one here in question, appealed.

For a considerable time previous to her death, decedent's eyesight had been failing. Her hands were distorted and the joints swollen from rheumatism, necessitating, for many years, the substitution of a mark for her signature. Some years before her death she had also suffered a stroke resulting in aphasia, which, at the time the will was made, had progressed to such extent that she could speak very little and only in monosyllables in reply to questions addressed to her. The will was prepared by an attorney who took it to decedent's house and there met her physician. These two persons witnessed the will. The attorney read it over to testatrix and asked her whether that was what she wanted and she indicated by a nod of her head that it was. The physician informed the lawyer she would be obliged to sign by a mark, whereupon he wrote the name of the testatrix to the paper and she made her mark with the assistance of the physician who supported her arm. Appellants contend these circumstances are not sufficient to show testatrix was unable to sign her own name and that her name was actually subscribed by another by her direction and authority within the meaning of the Wills Act

of June 7, 1917, P. L. 403, section 2 of which requires the will to be signed by the person making it "or by some person in his presence and by his express direction," and section 3 provides that "if testator be unable to sign his name for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross......shall be as valid as though he had signed his name thereto." It will be observed that, while section 2 requires "express" authority from testatrix, this word is omitted in section 3 which requires merely that the name be signed "by his direction and authority." We have held that under section 3 an express request that another sign testator's name is unnecessary and that authority may be inferred from the fact that testator saw the name written and then signified his approval of the act by placing his mark under the signature; Novicki v. O'Mara, 280 Pa. 411.

The next contention of appellants is that Mrs. Deacon, the principal devisee under the will, did not meet the burden the law cast on her of overcoming the presumption of undue influence which arose by reason of the confidential relation existing between her and testatrix. The question was submitted to the jury and now it is contended the court should have decided, as a matter of law, that the burden of proof had not been met. Mrs. Deacon had been caring for testatrix for a number of years. A short time before the will was made testatrix asked her if she would stay with her until she died, and, upon Mrs. Deacon's hesitating to make such promise, testatrix promised that if she would do so she (testatrix) would change her will in Mrs. Deacon's favor. The latter stated a verbal promise was insufficient and testatrix then requested Mrs. Deacon to call her attorney by telephone, which she did, and the will here in question was drawn and subsequently signed under circumstances heretofore described. Mrs. Deacon was not in the room

at the time the attorney called and read the will over to testatrix and we find nothing to indicate improper influence at that time. Both witnesses to the will, one being the family physician, testified testatrix was mentally in condition to make a will and in fact her mental capacity seems to be conceded in this appeal as the question was not argued by appellants. In view of the fact that Mrs. Deacon was caring for testatrix up until the time of her death, the provision made for her in the will is not unnatural and the explanation given of what took place before the will was executed is sufficient to sustain the conclusion that the burden of proving absence of improper influence was fully met.

Concerning the remaining question relating to the instruction given by the court to the jury, following a report of their failure to agree, little need be said. The jury had been deliberating for five or six hours and returned to the court room and stated their inability to agree on a verdict. The court told them, in effect, that while each had the right to express his own opinion and stand by his conclusion, and that the jury was the only institution where the majority did not rule, yet if there was a small minority holding out against the majority of the jurors, it was the duty of the minority to scrutinize the evidence carefully and make very sure they were right before taking an obstinate stand; that the case had taken three days for trial and it was to be regretted they were unable to render a verdict, and apparently there was no reason why they should not agree. One of the jurors then informed the court that they stood eleven to one and were unable to convince the single juror that he ought to change his mind. The court thereupon said that the juror might be right or wrong and it was his duty to listen to the arguments of the others and examine the evidence very carefully before persisting in the stand he had taken, and that the court could do nothing more. They were directed to return to the jury room for further deliberation and shortly thereafter returned a verdict.

We find nothing in these instructions that can be construed as an infringement on the rights of either party or on the right of trial by jury. The court did not attempt to usurp the functions of the jury nor to compel them to agree against their consciences or convictions.

The judgment is affirmed.