## Estate of Mary Jane Wilson.

*Wills—Signing—Signature by mark—Extremity of last sickness—Section 2 of the Act of June 7, 1917, P. L. 403.*

The requirements of Section 2 of the Act of June 7, 1917, P. L. 403, are satisfied by the signature of a testatrix, who in the extremity of her last sickness and in the presence of two subscribing witnesses, signs a will by making her mark at the end thereof.

What shall constitute a signature must be determined in each case by the circumstances. The test in each case being whether the testator intended the name or mark to be his signature.

Argued April 30, 1926. Appeal No. 182, April T., 1926, by Hugh R. Wilson, from decree of O. C. Allegheny County, September T., 1925, No. 859, in the case of the Estate of Mary Jane Wilson, deceased. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Appeal, from the action of Register of Wills, in probating a will. Before MILLER, P. J., TRIMBLE and MITCHELL, JJ.

The facts are stated in the opinion of the Superior Court.

The court dismissed the appeal. Hugh R. Wilson appealed.

*Error assigned,* among others, was the order of the court.

*Septer W. Douglas,* and with him *Fred L. Maury,* for appellant.

*Harry G. Tinker,* for appellee.

OPINION BY GAWTHROP, J., July 8, 1926:

One of the heirs at law of Mary Jane Wilson appeals from a decree of the Orphans' Court dismissing an appeal from the action of the Register of Wills of Allegheny County in probating the following paper as the last will and testament of the said Mary Jane Wilson, deceased:

"Mary Jane Wilson

All Bank Books and Insurance goes to Mrs. R. Graham 6 Meta Street Duquesne Heights Some time for her to erect a monument in Stone Church Cemetery in Elm Grove where my Sister and brother are buried and I am to be buried in Home wood and erect a stone for me.

Also pay hospital bills.

No one else to be notified.     Undertaker Woods, Oakland.

If anything should happen before morning call Perrysville Ave. Orphanage Mr. Graham to have all my clothes.

Her
X
Mark

Witness

James C. Jacobs
Anna W. Heslop          Dec. 27, 1924."

For more than fifteen years prior to her death the testatrix had been a resident of Pittsburgh. For the last five years of her life, when not employed, she made her home with the Mrs. Graham named in the

will, but paid nothing for her room or board. Her next of kin are two brothers who live outside of Pennsylvania, whom she had not seen for several years. She was taken to the hospital, critically ill, two or three days before her death. About two o'clock in the morning of December 27, 1924, she asked the attending nurse, Miss Beers, if she "would write some things that she wanted to be left to Mrs. Graham, because she felt her condition was not good." She told Miss Beers what she wanted done. Miss Beers testified: "She told me just what I wrote down on the paper." After Miss Beers had reduced the instructions to writing, she read it to the testatrix several times and the latter said: "That is correct." Miss Beers retained the paper until she went off duty at seven o'clock in the morning, when she handed it to Miss Grinberg, the day nurse. Miss Grinberg put the paper on the decedent's chart. About eleven o'clock in the morning when Mrs. Graham called to see the testatrix, the latter said to Miss Grinberg that as Mrs. Graham was there she felt that the paper, which she called a will, could be witnessed and signed. Miss Grinberg called to the room two persons, employees of the hospital, whose names appear as subscribing witnesses to the writing, and in their presence read the paper to the decedent and asked her whether she was ready to have it witnessed and signed. The testatrix nodded her head, indicating that she was. Miss Grinberg then handed to her a pen and she marked a cross at the end of the writing. Then the paper was signed by the subscribing witnesses, who testified that the will was read to the testatrix in their presence, that, while she was very weak physically and did not talk, she was mentally clear, understood the contents of the paper and, when asked if the writing was her will, nodded her head in assent and took the pen in her hand and made her mark unaided. The paper was executed between eleven and eleven-thirty o'clock on the morning of

December 27th, and the decedent's death occurred about five o'clock the same afternoon.

The sole question raised is whether the paper was signed and executed in compliance with our Wills Act of June 7, 1917, P. L. 403. The second and third sections of that act prescribe the method of executing a will in Pennsylvania. The second section reads as follows: "Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his expressed direction." The third section reads as follows: "If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do, in which case his mark or cross shall not be required, shall be as valid as though he had signed his name thereto; provided, that such will shall be proved by the oaths or affirmations of two or more competent witnesses."

It is strenuously contended for the appellant that the will was not executed in the method prescribed by either of these sections of the act. The execution did not conform to the requirements of the third section, because the name of the testatrix was not subscribed to the will. But, by the terms of that section, its application is limited to persons who are unable to sign their names for a reason other than the extremity of their last sickness. As the learned court below found on sufficient evidence that the testatrix was prevented from signing her name by the extremity of her last sickness, it is manifest that the third section does not apply to this case. Therefore, the point to be decided is whether the crossmark placed on the will by the testatrix was a signature, that is, whether the paper was signed by her, as required by the second section of the act. That section is a re-enactment of

the sixth section of the Wills Act of April 8, 1833, P. L. 249. That act was founded on the English statute of frauds, 29 Car. II, Sec. 2 the phraseology of which it follows closely. Under the English statute it was decided repeatedly that a signature by a mark was sufficient. While it was decided in Graybill v. Barr, 5 Pa. 441, and Asay v. Hoover, 5 Pa. 21, and kindred early cases, that a mark was not a valid signature to a will, within the meaning of the Act of 1833, our Supreme Court, speaking through Judge STRONG in Vernon v. Kirk, 30 Pa. 222, said of those decisions: "It was only by judicial construction that........ (the statute) was made to require at the end of the will the testator's signature by his name." In Knox's Estate, 131 Pa. 220, Mr. Justice MITCHELL denominated the construction of the Act of 1833, that a mark was not a signing as "narrow," and stated that the construction was changed by the legislature as soon as their attention was directed to it, by the Act of January 27, 1848, P. L. 16. The point decided in Knox's Estate was that the testatrix's first name, placed by her at the end of the paper, was a sufficient execution under the Act of 1833. But in discussing the question what constitutes a sufficient signing of a will under the Act of 1833, the court said: "All the definitions (of the words "sign" and "signature") include a mark, and no dictionary limits a signature to a written name. There can be no doubt that historically, and down to very modern times, the ordinary signature was the mark of a cross; and there is perhaps as little question that in the general diffusion of education at the present day the ordinary use of the word implies the written name. But this implication is not even yet necessary and universal. The man who cannot write is now happily an exception in our commonwealth, but he has not yet entirely disappeared, and in popular language he is still said to 'sign,' though he makes only his mark....... As in all cases where the intent is the test, there can be

no hard and fast legal rule as to form...... What shall
constitute a signature must be determined in each
case by the circumstances.'' In Plate's Estate, 148
Pa. 55, it was stated: ''Exactly what constitutes a
signing has never been reduced to judicial formula.
The principle upon which these cases proceeded was,
that whatever the testator or grantor has shown to have
intended as his signature, was a valid signing, no
matter how imperfect or unfinished.'' In Brennan's
Estate, 244 Pa. 574, 581, the court said: ''Signing
in the usual acceptation of the word and in the sense
in which, presumably, it is used in the act (1833) is
the writing of a name or the affixing of what is meant
as a signature.'' In Kimmel's Estate, 278 Pa. 435,
the point to be decided was whether the word ''Father''
signed at the end of a paper was meant as a signa-
ture. In considering the question, as controlled by
the second section of the Wills Act of 1917, Mr. Jus-
tice SIMPSON said that it is necessary to look dehors
the statute for a definition of what should be deemed
a signing. He pointed out again that the act is
founded on the statute of frauds, 29 Car. II, under
which it was held that the signing may be by a mark,
cited with approval Knox's Estate, supra, and Plate's
Estate, supra, and stated that the doctrine of those
cases has never been doubted. In all of the cases
in our Supreme Court since Knox's Estate, supra,
in which the question was, what is a sufficient signa-
ture under the Wills Acts of 1833 and 1917, the de-
cision turned on the question, whether the word af-
fixed was intended as a signature. While it is, of
course, true that the making of a mark differs from
the signing of the word ''Father'' in Kimmel's Es-
tate, in that the testator in that case was in the habit
of signing his letters by the word ''Father,'' there
can be no doubt that the testatrix intended the mark
made by her at the end of the writing as a completed
signature thereto. Therefore, we are of opinion that
the mark made by this testatrix constituted a sign-
ing by her within the meaning of the second section

of the Wills Act. We adopt the following from the opinion of the court below: "A mark so affixed may be said to be stronger evidence of the intendment of the signing and execution than where the testator subscribes himself by "Father" or by some other relation, or by the informality of initials or a diminutive, because a mark or cross is used only in case of a signature to a writing of legal value."

The decree of the court below is affirmed, and the appeal is dismissed, the costs in this court to be paid by the Estate of Mary Jane Wilson, deceased.