## Cairns's Estate.

*Wills—Probate—Signing will by mark—Evidence.*

Where testator, after a paper testamentary in character has been read to him, makes a mark in the presence of two witnesses at a place indicated and thereafter the paper is taken into another room out of his presence and there signed by the witnesses, and after this, without his request, testator's name is signed to the paper and the words "his mark" written over and below his name by another person, such paper is not a will executed in accordance with the Act of June 7, 1917, P. L. 403.

Appeal from decision of the Register of Wills. O. C. Delaware Co., Dec. T., 1923, No. 125.

The facts are stated in the opinion of the court.

*C. Wilfred Conard*, for appellant; *William W. McKim*, contra.

HANNUM, P. J., Feb. 7, 1927.—Sarah Cairns died Sept. 20, 1923, and a paper writing dated Aug. 25, 1923, purporting to be her will, was offered for probate by Daniel Cairns, her husband; and the Register of Wills, after hearing, by decree made Feb. 15, 1924, admitted to probate said instrument of writing as the last will and testament of said Sarah Cairns, and letters testamentary were granted by the said Register of Wills to Daniel Cairns, the person named as executor in said paper, on said Feb. 15, 1924.

An appeal was taken by Mildred S. Treuter, a niece of decedent, from the decision of the Register of Wills on Feb. 26, 1924, and a bond in the sum of $500 was filed March 3, 1924.

The questions to be determined on said appeal are:

1. Was the paper, alleged to be the will of Sarah Cairns, executed in accordance with the provisions of the Wills Act?

2. Was the alleged will of Sarah Cairns her conscious testamentary act, or was it the result of influence practiced upon her rather than her own testamentary intention?

3. Was the will executed in accordance with the terms of the Wills Act?

A hearing was held before the court on Dec. 20, 1926. The witnesses called as to the execution of the paper were Jane T. Alexander and Mary Jenkins and W. W. McKimm, Esq., who wrote the will.

From the testimony, it appears that Sarah Cairns, at the time she executed the paper, was seventy-eight years of age; that three or four years prior to the execution of the paper she suffered from a paralytic stroke, and from that time on was unable to use her right arm, and was unable to speak intelligently, and she could only make sounds indicating assent or dissent, but could not speak words.

From the evidence, it appears that W. W. McKimm was told by the husband of Sarah Cairns that she wanted to make a will, and that she wanted to leave all her property to her husband and make him executor. McKimm saw Mrs. Cairns and asked her whether that was what she wanted. She nodded her head, "Yes." He then went home, prepared the paper, and after a few days he took it to the residence of Mrs. Cairns. He gave it to Mrs. Jenkins, who was present at the house, with instructions to read the paper to Mrs. Cairns, direct her where to make her mark, and that she, Mrs. Jenkins, and Mrs. Alexander were to act as witnesses.

The two witnesses to the paper purporting to be the will each testified that Mrs. Jenkins read the paper over twice to Mrs. Cairns, and that then a pen was given to Mrs. Cairns and she was shown where to make her mark, she

being assisted in making the mark by having her arm supported by Mrs. Jenkins.

After she had put her mark to the paper, Mrs. Jenkins took the paper and, in company with Mrs. Alexander, went into the dining-room, which adjoins the bedroom, the door of the bedroom being open, and put the paper on the dining-room table. Each of the witnesses signed her name as a witness. And after this was done, McKimm wrote the name "Sarah Cairns," and also wrote the words "her mark."

This was done in the next room, and while it may have been in the sight of Mrs. Cairns, there is no evidence that she saw her name written. Both of the witnesses to the paper testified that Mrs. Cairns didn't request them to sign as witnesses. There is no evidence in the case which shows that Sarah Cairns's name was written by McKimm at her request or by her direction or by her authority. And it is admitted that there was no such actual request by Sarah Cairns to McKimm to sign her name. In fact, there is no evidence that she ever knew that her name had been signed on this paper by McKimm or had been signed at all.

The effort [was made] to sustain the paper purporting to be the will [on the ground] that there was an implied authority in McKimm to sign her name, because of the fact that the table upon which the writing was when he did sign her name was within the view of Mrs. Cairns, had she looked to see. But there is no evidence that she ever saw that her name was signed to this paper.

The Wills Act of June 7, 1917, P. L. 403, provides, by section 2, that "Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction."

By section 3: "That if the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do—in which case the mark or cross shall not be required—shall be as valid as though he had signed his name thereto."

Mrs. Cairns was not prevented by the extremity of her last sickness from signing the will, and, therefore, section 3, and not section 2, applies to the present case.

In Novicki v. O'Mara, 280 Pa. 411, 415-16, the court held that the 3rd section applied where the testator was unable to sign by reason of physical disability, and that, under the 3rd section, the direction by the testator that some one should sign his name may be either express or implied.

And in Girard Trust Co. v. Page, 282 Pa. 174, the court said that, under section 3 of the Act of 1917, an express request of another to sign testator's name was unnecessary, since "authority may be inferred from the fact that the testator saw the name written and then signified his approval of the act by placing his mark under the signature."

In Hughes's Estate, 286 Pa. 466, the court said: "Where a person is not prevented from signing his will because of the extremity of his last sickness, but because of a physical disability, the 3rd section of the Act of June 7, 1917, P. L. 403, applies, and not the 2nd section."

In such case, testator's name must be subscribed in his presence and by his direction and authority; and the direction that some one should sign his name may be either express or implied. When implied authority to sign the alleged testator's name is relied on, and the implication must arise from the fact that the signing was in his presence, then it must appear that he saw his name

Cairns's Estate.

placed on the document or was in a position to observe the performance of that act; and that, in addition, he must know the nature of the document signed in his name.

From the evidence it appears: 1. That there was no express direction to sign testatrix's name. 2. There is no evidence that the testatrix saw her name placed on the document by McKimm. Neither was she in a position to see it done.

Therefore, there was no implied authority to McKimm to sign her name to the paper; and she didn't signify her approval of the act by placing her mark to the paper after it had been signed.

From the evidence, I am of opinion that she did not know that anything had been signed to the paper except her mark, and this is not sufficient.

Therefore, the paper probated cannot be sustained as a will, not having been executed in accordance with the act of assembly.

The decision of the other question raised by the appeal is not necessary.

The appeal from the decision of the Register of Wills is sustained. The decree of the Register of Wills admitting the paper to probate is set aside. The letters testamentary are revoked, and the probate of this paper as a will is stricken from the record; costs to be paid out of the estate.

From William R. Toal, Media, Pa.