# Carmello's Estate.

*Wills—Probate—Appeal from register of wills—Findings of fact—Evidence.*

1. On an appeal from a decree of the orphans' court dismissing an appeal from the register of wills, the findings of fact by the trial judge, where supported by competent evidence, must be accepted as conclusive by the appellate court.

*Wills—Probate—Signature—Mark—Ordinary practice — Assistance—Act of June 7, 1917, P. L. 403.*

2. Under the Act of June 7, 1917, section 3, P. L. 403, a mark to a will is sufficient if made by one who cannot sign for any reason; the provision is intended to embrace cases where the testator is unable to act whether from physical weakness or lack of education.

3. The section is applicable even if testator at one time was able to sign his name, if it appears that, through physical weakness, he was unable to sign his name at the time he made his mark.

4. The fact that testator, in making his mark to his will, pursued the practice ordinarily followed by him in executing all business papers, is to be considered in determining whether he intended to adopt the writing as his own.

5. Under the Act of June 7, 1917, to justify the acceptance of a writing as a will, it must appear that testator's name was signed

to it in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable to do so.

6. Permission to append the signature may be implied from attending circumstances such as testator's placing his mark on the paper after the name is written; the mere fact that testator is physically assisted in making the mark is immaterial.

7. A paper is properly sustained as a will, where the orphans' court finds, on competent evidence, that the writing was prepared at decedent's direction, was read in full to him, that his name was signed in his presence by the scrivener, that the paper was then presented to him together with a pen, with which he made his mark, and at the same time he was told that this was his last will and testament, and asked if he wished the two persons present to witness his will, to which he replied "Yes."

Argued April 12, 1927. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 61, Jan. T., 1927, by Louisa Ronco et al., contestants, from decree of O. C. Monroe Co., on appeal from register of wills, in estate of Louis Carmello, deceased. Affirmed.

Decree from decision of register of wills admitting will to probate. Before Shull, P. J.

The opinion of the Supreme Court states the facts.

Appeal dismissed. Louisa Ronco et al., children of testator, appealed.

*Error assigned,* inter alia, was decree, quoting record.

*E. Kent,* of *Kent & Rockwell,* with him *F. J. Mervine,* for appellants, cited: Main v. Ryder, 84 Pa. 217; Picconi's Est., 4 Pa. D. & C. R. 245.

*A. G. Gearhart,* of *Rhodes & Gearhart,* for appellees, cited: Wilson's Est., 88 Pa. Superior Ct. 556; Kimmel's Est., 278 Pa. 435; Girard Trust Co. v. Page, 282 Pa. 174; Picconi's Est., 4 Pa. D. & C. R. 245; Hughes's Est., 286 Pa. 466; Novicki v. O'Mara, 280 Pa. 411.

OPINION BY MR. JUSTICE SADLER, May 9, 1927:

Louis Carmello, an Italian by birth, was a naturalized citizen and resident of Monroe County, where he had been engaged in business until within a few years of his death. His knowledge of English was limited, as was his ability to write, and usually his signature was indicated by a mark. Though possibly able, with difficulty, to subscribe his name at times, yet this was not his general practice in conducting business transactions. For a considerable period before making the document now in controversy the testator had been ill, having suffered a stroke of apoplexy, and was a patient in a local hospital some weeks previously, though he had returned to his own home prior to January 23, 1925, when the writing was executed. His physician testified that his mental condition on that day was satisfactory, but his physical weakness made it doubtful if he could have made more than "a scrawl," if able to write at all.

In the November preceding he had requested an attorney to come to his house and prepare a will. The scrivener called, received directions as to the intended disposition of his estate, and within a few days the desired paper was prepared from the data furnished. The contents of the completed document were gone over with the testator, and his satisfaction therewith expressed. At Carmello's direction, his name was affixed by the lawyer, a mark added, and two witnesses then subscribed their names. Later, upon his return from the hospital, he determined to alter the will, substituting another for the one first named as executor. It was rewritten, with a single change, and, on January 23d, submitted to Carmello, who at the time was partially reclining on a cot in his room to which he had been confined. The document was read in full, and his name was then written by the scrivener in his presence, and, with the assistance of the latter, his mark was added. The lawyer and his stenographer signed upon request as witnesses. After

the death of testator this paper was admitted to probate by the register.

By the will one property was devised to a daughter residing with him, and, with the exception of the gift of a piano to a granddaughter, all the residuary estate was divided equally between his five children. Three of these were dissatisfied with the division made and appealed. A citation was issued by the orphans' court to show cause why the probate should not be set aside, on a petition asking for an issue, it being averred that the father was without testamentary capacity, that the will was obtained by the exercise of undue influence, and that the writing was not effectively completed. The first two grounds mentioned were abandoned, and the controversy narrowed to the question of the adequacy of the execution of the instrument as a will. The court below declined to send the case to a jury, because in its opinion no substantial dispute appeared to make this necessary (Tetlow's Est., 269 Pa. 486; Miller's Est., 288 Pa. 476; Wagner's Est., 75 March T., 1927, 289 Pa. 361), and dismissed the contest. A review of this decree is now asked, and, in passing upon the sole question here raised, the findings of fact of the trial judge, where supported by competent evidence, must of course be accepted as conclusive by us: McCullough's Est., 287 Pa. 580; Wagner's Est., supra.

Appellants contend that the making of the mark by Carmello was insufficient under the Wills Act (June 7, 1917, P. L. 403), and probate of the paper submitted to the register should, for this reason, have been refused. It appeared, as already noticed, that the decedent had been ill for some time as the result of a stroke, was in a seriously weakened condition on January 23d, and so continued until his death two weeks later. The court found the writing was prepared at Carmello's direction, "was read in full, and the name signed in his presence by the scrivener, the paper then presented to him, together with a pen, with which he made his mark, and at

the same time [he was] told that this [was] the last will and testament and asked if he wished the two persons present to witness his will, to which he replied 'yes.' "

It is claimed, however, that the placing of a mark on the paper by testator was not enough, as it did not clearly appear that he was unable to sign his own name. This makes necessary a consideration of the applicable legislation controlling such a situation. The Wills Act (June 7, 1917, P. L. 403) provides for the disposition of property by those over twenty-one, who are of sound mind (section 1). It also directs that the document shall be in writing, and, unless prevented "by the extremity of his last sickness, shall be signed by [the maker] at the end thereof, or by some person in his presence, and by his express direction." In the absence of proof of these facts the provisions of section 2 are not applicable (Hughes's Est., 286 Pa. 466; Wilson's Est., 88 Pa. Superior Ct. 556) to the instant case, and they were not shown to be present. To support the writing, the authority must be found, if at all, in section 3, which regulates the execution of such an instrument by a mark "if the testator is unable to sign his name, for any reason other than the extremity of his last sickness," and provides that in such case it shall be "subscribed in his presence, by his direction and authority, and to which he makes his mark or cross," unless incapacitated from doing so.

Under this legislation, a mark is sufficient if made by one who cannot sign for any reason, and this provision was intended to embrace cases where the testator is unable to act, whether "from lack of education or from physical weakness": Report of Commission on Decedents' Estates, 1917, p. 59. It is not necessary to show that the decedent had in the past been without power to sign his name, as urged by appellants, but the document is sustainable if he is without power to presently do so for other reasons, as for example, from loss of eyesight (Novicki v. O'Mara, 280 Pa. 411; Brehony v. Brehony,

289 Pa. 267), or the use of his hands: Girard Trust
Co. v. Page, 282 Pa. 174. If the other requirements of
execution are present, the proof that at some prior time
the deceased could write, will not make inapplicable the
section referred to: Hughes's Est., supra. A like deter-
mination was reached under the earlier Act of 1848
(Jan. 27th, P. L. 16) ; Main v. Ryder, 84 Pa. 217. The
same objection as now insisted upon was ineffectively
raised, as appears by an examination of the record, in
Miller's Est., supra, where the decree refusing an issue
was affirmed, though the suggested defect, as set forth
in the statement of questions involved, was not discussed
in the opinion filed. In the present case, the inability of
Carmello to sign his own name by reason of physical
weakness, when the will was executed, was sufficiently
shown, and, in so acting, testator pursued the practice
customarily followed by him in executing all business
papers, a fact to be considered (Kimmel's Est., 278 Pa.
435; Fisher's Est., supra) in determining whether he in-
tended to adopt the writing as his own.

It is further alleged that the execution of the will is
fatally defective since no express direction to sign de-
cedent's name was proven. By the terms of the earlier
Act of 1833 (P. L. 249), this was necessary in all cases
where testator could not write himself, but the require-
ment was modified by later legislation: Act January
27, 1848 (P. L. 16, section 1). And practically the same
phraseology as found in that act is employed in section
3 of the Wills Act of 1917. To justify the acceptance of
the paper it must now appear that testator's name was
signed to it "in his presence, by his direction and au-
thority, and to which he makes his mark or cross unless
unable to do so." Under this wording, permission to
append the signature may be implied from the attend-
ing circumstances, differing in this respect from the re-
quirement of "express direction" where the effort is to
probate under the provisions of section 2 of the Wills
Act: Novicki v. O'Mara, supra. Acquiescence is shown

by the placing of the mark on the paper after the name is written, as here (Girard Trust Co. v. Page, supra; Wilson's Est., supra), and the mere fact that testator is physically assisted in making it is immaterial: Hopkins's Est., 277 Pa. 157; Brehony v. Brehony, supra. The evidence in the present case clearly shows the signature to have been made in the presence of Carmello, who was in a position to observe its affixing, that he intelligently placed his mark, and caused the paper to be subscribed by two disinterested witnesses. As the record stood, no question as to testamentary capacity or undue influence was involved; the only dispute was concerning the right to probate the paper prepared in the manner described. The due execution sufficiently appeared by the facts proven, and the appeal from the probate was properly dismissed. The assignments of error are overruled.

The decree of the court below is affirmed at the cost of appellants.