## Cassell's Estate

*Milford J. Meyer* and *D. B. Pitler,* for exceptants.
*Robert M. Sebastian* and *Leo MacFarland,* contra.

LADNER, J., July 1, 1938.—From an examination of the record it appears that the learned hearing judge found the facts as follows: Decedent's attorney, Leo Mac-Farland, who had represented her for over 30 years, was called to the hospital where she was a patient and received from her instructions to prepare a will, leaving her entire estate to her niece. Mr. MacFarland prepared the will in accordance with instructions and returned to the hospital the next day accompanied by his son, also

a member of the bar, to have it executed. Mr. MacFarland then said to decedent, "This is your will you asked me to draw, it leaves everything to Marie Campbell as you directed me. Will I read it to you or will you look at it?" Decedent took the will, which was only one page, looked at it a few moments, expressed her approval, took the pen offered to her and endeavored to sign her name, but her hand trembled so that she was unable to write. Mr. MacFarland then said, "Well, if you cannot sign your name you make your mark and I will write your name there." To which decedent said, "All right", and nodded her hand at the same time. Witness further testified, "She then put her mark and I wrote her name and my son and I witnessed it." Afterwards the witness testified that he thought he "wrote the name and left a blank space for her to make her mark and she made her mark then . . . but would not say for sure." He also testified that he wrote her name on the will in her presence while it was resting on a magazine or a book which was on her lap right in front of her.

The testimony of the other witness, Richard MacFarland, varied somewhat in unimportant particulars, but so far as the essentials were concerned was substantially to the same effect. This witness also was not sure whether decedent made her mark before her name was written or afterwards, but was clear that her name was subscribed in her presence, "right in front of her".

Learned counsel for exceptants pressed two propositions at the argument. The first is that in order for a will to be validly executed under section 3 of the Wills Act of June 7, 1917, P. L. 403, it is essential in all cases that the mark be made after decedent's name is written thereto. It is argued that Kelly's Estate, 306 Pa. 551, 555, must be construed as so requiring, and in support thereof our attention is directed to the following extract of Mr. Justice Maxey's opinion:

"A paper in form of a will and purporting to be a will is not a will until it is legally assented to by the person

whose will it purports to be. A testator unable to sign his name (unless his inability to sign his name arises from the extremity of his last sickness: see section 2 of the Wills Act of 1917, and Wilson's Est., 88 Pa. Superior Ct. 556) can register his assent to the paper purporting to be his will only by the method prescribed by the third section of the Wills Act, supra. That method is this: First, his or her name must be subscribed to the will in his or her presence and by his or her direction and authority. Second, after this is done, he or she must make his or her mark or cross at the appropriate place in the signature."

Counsel argues further that the decision of this court in Zoltek's Estate, 22 D. & C. 721, following Picconi's Estate, 4 D. & C. 245, to the effect that the order of the making of the mark and the writing of the name is immaterial—must perforce give way to the explicit language of Mr. Justice Maxey just quoted.

The vice of counsel's position is his failure to distinguish between the cases in which direction and authority to subscribe a testator's name is to be implied and those cases in which such direction and authority is express. As was pointed out in Drew's Estate, 32 D. & C. 297, 301, Kelly's Estate, supra, was a case in which there was no testimony of express direction and authority but where the requisite direction and authority was sought to be implied from the circumstances. The learned justice was therefore naturally establishing a formula to be followed whenever direction and authority is sought to be implied. There is good reason to hold that when express direction and authority cannot be shown, then, perhaps, the only, but certainly the best evidence of an implied direction and authority is to be found in the act of the testator approving the subscribing of his name by making his mark thereafter. Without such evidence of approval it is difficult with any degree of certainty to prescribe sufficient facts from which such implication can be safely drawn: See Hughes' Estate, 286 Pa. 466.

In both Zoltek's Estate, supra, and Picconi's Estate, supra, there was an express direction and authority. Though direction and authority *need* not be express (Novicki v. O'Mara, 280 Pa. 411; Girard Trust Co., Executor, v. Page et al., 282 Pa. 174), nevertheless when it *is* express the order of the placing of the mark becomes immaterial. In all the cases cited by counsel in either of our appellate courts or lower courts where the order of the making of the mark was emphasized as material the required direction and authority was endeavored to be shown by implication.

In the instant case the evidence shows that direction and authority to subscribe her name was expressly given by decedent after an ineffectual attempt to sign herself. It must follow, therefore, that whether the attorney subscribed her name before or after she made her mark becomes unimportant. So too, the failure of the witnesses to remember the precise order becomes likewise unimportant. The hearing judge did not err in this regard.

The other point argued is whether sufficient proof of execution by mark by two witnesses was adduced as required by section 3 of the Wills Act.

We must regard it as now definitely settled by the Supreme Court in James' Estate, 329 Pa. 273 (affirming this court, 30 D. & C. 81), that under section 3 of the Wills Act of 1917, where a will is not signed by a testator but is executed by mark, proof of the necessary facts of execution must be made by two or more witnesses, each of whose testimony must be complete, independently of the others, as to the presence not only of the testator's name but the circumstances under which it was subscribed. Nor can the mandate of this statute be supplied by the presumption "Omnia præsumuntur rite esse acta": Drew's Estate, supra.

The learned hearing judge in his opinion, in strict compliance with this rule which he quoted, carefully reviewed and thus considered separately the testimony of the two

witnesses, setting forth in his opinion appropriate extracts thereof which we need not here repeat, from which he concluded that the testimony of each standing alone sufficiently set forth all the essential circumstances which section 3 of the Wills Act of 1917 requires.

We have carefully reëxamined the entire record and have come to the same conclusion.

The exceptions are therefore dismissed and the decree of the hearing judge is confirmed absolutely.