# Hughes's Estate.

*Wills—Probate—Signature—Extremity of last sickness—Physical disability—Signing by cross or mark by testator's direction in his presence—Implied direction—Knowledge—Issues d. v. n.—Act of June 7, 1917, P. L. 403.*

1. Where a person is not prevented from signing his will be-

1926.]                    Syllabus.

cause of the "extremity of his last sickness" but because of a physical disability, the 3d section of the Act of June 7, 1917, P. L. 403, applies and not the 2d section of the act.

2. In such case testator's name must be subscribed in his presence and by his direction and authority, and the direction that some one should sign his name may be either expressed or implied.

3. When implied authority to sign an alleged testator's name is relied on, and the implication must arise solely from the fact that the signing was in his presence, then it must appear that he saw his name placed on the document or was in a position to observe the performance of that act, and, in addition, he must know the nature of the document signed in his name.

4. If on a petition for an issue devisavit vel non, the testimony leaves it doubtful whether the name of decedent was signed to the document in controversy in her presence, and whether she actually saw her name written on it, an issue should be granted to determine whether the will was executed as required by law.

5. In such case if the court below has allowed an issue on the question of undue influence, the appellate court will direct that an additional issue be allowed as to whether or not the will was executed in the presence of testatrix and by her direction and authority.

6. Where an issue is granted as to alleged undue influence, if there is testimony that, on the date when the will was executed, testatrix was in such an impaired mental state as to warrant the sustaining of a finding against the will, and there is also testimony that such impairment was on a date subsequent to the date of the will rather than at the time of its execution, an issue as to testamentary capacity should also be granted in addition to that for undue influence.

Argued May 12, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 28, Jan. T., 1927, by Marie F. Freeley et al., contestants, from decree of O. C. Delaware Co., June T., 1925, No. 61, refusing issues devisavit vel non, in estate of Mary F. Hughes. Reversed in part.

Petition for issues devisavit vel non. Before HANNUM, P. J.

The opinion of the Supreme Court states the facts.

Decree refusing issues as to testamentary capacity, and whether the will was legally executed. Marie F. Freeley et al., contestants, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Bryan A. Hermes,* with him *William J. MacCarter,* for appellants.—It may be considered settled law that section 2 requires an express direction to another to sign for a testator, and under section 3, the direction and authority required may be express or implied from the circumstances: Novicki v. O'Mara, 280 Pa. 411; Girard Trust Co. v. Page, 282 Pa. 174; Picconi's Est., 4 Pa. D. & C. 245.

As this will was executed in the extremity of the last illness, its validity must be tested by section 2 of the Wills Act.

*Francis Shunk Brown,* with him *William C. Alexander,* for appellee, cited: Hopkins's Est., 277 Pa. 157.

Opinion by Mr. Chief Justice Moschzisker, May 26, 1926:

Mary F. Hughes, widow, died July 8, 1925, leaving three children, a daughter and two sons, all of full age; a paper dated July 1, 1925, was admitted to probate as the will of decedent and letters testamentary were granted thereon to Thomas E. Hughes, whom the testatrix referred to as her husband but the court below found to be her "paramour." At a later date, decedent's three children appealed to the orphans' court, filing a petition for a citation, wherein they prayed that Thomas E. Hughes be directed to show cause why the probate should not be set aside and issues directed to the court of common pleas on the following questions of fact: "(1) Whether or not at the time of the execution of said writing decedent was a person of sound mind. (2) Whether or not the said writing was procured by undue

influence......practiced upon said decedent by Thomas
E. Hughes and others. (3) Whether or not the said
writing is the will of decedent." The matter came to a
hearing on petition and answer, and, under the proofs
presented, the court below refused to order either the
first or third questions to be sent to the common pleas,
but directed an issue devisavit vel non "to determine
......whether or not the writing was procured by undue
influence," thus allowing the second issue. The pe-
titioners have appealed, contending that the court
should either have set aside the probate on the ground
that the will was not executed in accordance with the
requirements of law or have allowed all the issues.

The only averment in the petition, regarding the third
of the above questions, is that "decedent was a woman
of education, capable of writing her name, and that the
writing accepted for probate by the register of wills is
signed by a cross"; but, despite this meagre averment,
it is clear the court below looked on the pleadings as
sufficiently raising the issue, argued on this appeal, as to
alleged noncompliance with statutory requirements at
the execution of the will, and considered that the
case had been tried on the theory that such a point was
involved, for its opinion states: "This contest......
presents [the] question......Whether or not the paper
purporting to be the last will of Mary F. Hughes was
executed in accordance with the provisions of the Wills
Act."

The Wills Act of June 7, 1917, P. L. 403, provides by
section 2 that "Every will shall be in writing, and,
unless the person making the same shall be prevented by
the extremity of his last sickness, shall be signed by
him at the end thereof or by some person in his pres-
ence and by his *express* direction"; by section 3
that "If the testator be unable to sign his name
for any reason other than the extremity of his last
sickness, a will to which his name is subscribed *in*
*his presence* [and] *by his direction and authority,* and

to which he makes his mark or cross unless unable to do so—in which case the mark or cross shall not be required—shall be as valid as though he had signed his name thereto." The court below properly concluded that section 3, and not section 2, applies to the present case.

The above statutory provisions have been recently construed by this court in two cases. In Novicki v. O'Mara, 280 Pa. 411, 415-16, testator had suffered a paralytic stroke; there, as here, on an appeal from the act of the register in probating a paper offered as the decedent's will, it was "contended for the contestant that the will was not legally executed." We said,—in language which fits this case,—that the second section of the Act of 1917 did not apply for the reason that decedent "was not prevented from signing the will because of the extremity of his last sickness," but that the third section did apply since he was unable to sign his name by reason of physical disability; and that, under the third section, the direction by testator that someone should sign his name "may be either express or implied." In the Novicki Case, however, there were no such contentions as in the present case, that the paper in controversy was not signed in the presence of the decedent and that, in the absence of this essential fact no implication of a direction by decedent to sign his name could arise; on the contrary, so far as the report of that case indicates, the paper there involved was signed in the presence of the decedent.

In Girard Trust Co. v. Page, 282 Pa. 174, 176-7, the will was unsigned by testatrix, because of the impaired physical condition of her hands. The contention was that the evidence failed to show her inability to sign,— not, as here, that it failed to show the paper to have been signed in her presence. We there said that, under section 3 of the Act of 1917, an express request of another to sign testator's name was unnecessary, since such "authority may be inferred from the fact that testator saw

the name written and then signified his approval of the
act by placing his mark under the signature."

The above quotation expresses the correct rule as to
the facts essential to bring such a case as the present
within the third section of the Act of 1917, one being
that, when implied authority to sign the alleged tes-
tator's name is relied on and the implication must arise,
as here, solely from the fact that the signing was in his
presence, then it must appear that he saw his name
placed on the document or was in a position to observe
the performance of that act. Of course, it must appear
also that he knew the nature of the document signed in
his name when he placed his mark thereon.

A careful reading of the testimony now before us fails
to make it plain whether the name of the decedent was
signed to the document in controversy in her presence,
and whether she actually saw her name written on it.
It does appear that her name was placed on the paper
in the room which she occupied, and that this was done
by one of the witnesses to the alleged will, also that
decedent put her mark thereto; but it cannot be told
from the testimony whether decedent actually saw or
could have seen the signing of her name, which, as al-
ready explained, is a fact essential to the implied au-
thority here depended on to bring the execution of the
will within the third section of the Act of 1917.

Under the circumstances. an issue should have been
allowed to establish whether the will was executed
as required by law. Had the evidence been preponder-
atingly plain that the execution accorded with the Wills
Act, as construed by us, then, of course, the court be-
low would not have been called upon to allow this issue;
but, as before indicated, the evidence was not plain, and,
since the court did allow an issue on the question of
undue influence, we shall direct an additional one as to
whether or not the will was executed in the presence of
the testatrix and by her direction and authority. When
the issue in question is presented to the jury, it will be

the duty of the trial judge to instruct that such authority may be implied.

In Lawrence's Estate, 286 Pa. 58, 66, we recently said that there may be cases where, because of the infirmity of the testator and other circumstances, "undue influence and [testamentary] incapacity may be so closely interwoven as to render it difficult, if not impossible, to separate them when conducting a judicial inquiry." In an earlier case, Wilson's App., 99 Pa. 545, 551, we said: "Where the charge of undue influence admittedly requires judicial investigation and the allegation of mental unsoundness is supported by the testimony of the attending physician and other witnesses, it is not [always] wise to restrain the inquiry within the narrow limits of the charge of undue influence alone."

When the principles of the authorities last above cited are applied to the present case, it appears that, since the charge of undue influence "admittedly requires judicial investigation" (there being no appeal from the finding of the court below to that effect), an issue ought to be allowed also on the question of testamentary capacity; for, if the witnesses for contestants are correct as to the date when they say they saw the testatrix and observed her impaired mental state, and the testimony at trial proves to be similar to that at the hearing under review, a finding that she lacked testamentary capacity could be judicially sustained. On the other hand, if the fact, passed upon by the court below, was found by a jury, that the witnesses in question were mistaken as to their dates, and, as a matter of fact, really saw Mrs. Hughes after the execution of the paper offered for probate, at a time when she had suffered sudden physical and mental collapse, then the testimony as to the lack of testamentary capacity would be greatly weakened, and on that issue the case would have to be treated accordingly. The question as to whether or not these witnesses saw and observed the testatrix on the day the will was executed or on another day, as claimed by the

proponent of the will, is, however, one which a jury should pass upon.

It is ordered that so much of the decree appealed from as refused to award an issue to try all three of the questions above discussed be reversed, and that the record be remitted with directions to the court below to order issues as suggested in this opinion; costs to be paid out of the estate.