## Kelly's Estate.

552

Argued February 2, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Chas. E. Berger,* for appellant.—In the instant case the subscribing witnesses identified the paper to which they saw the testatrix affix her mark, but failed to remember whether the name of the testatrix had been written on the will before the cross was made. The scrivener says that the name of the testatrix was on the will when it was executed in the presence of the subscribing witnesses. We contend that this constitutes a valid execution of the will. See Greenough v. Greenough, 11 Pa. 489, 498-9, and Novicki v. O'Mara, 280 Pa. 411, 416.

Even if testatrix could not write or read (which is the fact) and executed her will by affixing a cross, it was not essential to its execution that it should be read to her in the presence of the subscribing witnesses, having first been read to her by Mr. McGurl, who prepared it: Coombs's and Hankinson's App., 105 Pa. 155, 160; White's Est., 262 Pa. 356, 361.

The evidence introduced was sufficient of itself to establish the legal execution of Mrs. Kelly's will on the authority of Novicki v. O'Mara, 280 Pa. 411, 415-17; Hughes's Est., 286 Pa. 466, 470; Carmello's Est., 289 Pa. 554, 557-60; Francis's Est., 299 Pa. 398, 400, 401;

and Keen's Est., 299 Pa. 430, 440. Coupled with the offers to follow by the testimony of the scrivener, we urge that the valid execution of the will was clearly established.

H. O. Bechtel, for appellee.—"Proof of execution must be made by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence so that no link in it may depend on the credibility of but one. ...... Circumstantial proof cannot, therefore, be made by two or more witnesses alternating with each other, as to the different parts of the aggregate of circumstances which are to make up the necessary sum of proof; the evidence of each not going to the whole": Hock v. Hock, 6 S. & R. 47; Rhoads's Est., 241 Pa. 38; Hodgson's Est., 270 Pa. 210.

OPINION BY MR. JUSTICE MAXEY, March 14, 1932:

This case in the form of an issue devisavit vel non issuing out of the orphans' court involves the validity of a will alleged to have been executed by Bridget Kelly who died June 12, 1928. She could neither read nor write. The alleged execution of the will took place on June 2, 1928, while Mrs. Kelly was a patient in a hospital. Miss Wells, the superintendent of the hospital was one of the subscribing witnesses and identified her signature affixed as a subscribing witness. Miss Koch, the bookkeeper of the hospital, also subscribed her name as a witness to the will. Miss Koch did not see the name Bridget Kelley written to the will but testified that she saw Mrs. Kelly make her mark to the will. When the will was offered in evidence, the contestant objected to its admission on the ground that the will was not properly executed, because the subscribing witnesses who saw Mrs. Kelly affix her mark did not testify that they saw her name signed at the end thereof when she made her mark. The court sustained the objection.

The subscribing witnesses were then recalled by the proponent. Miss Wells testified that though she saw the testatrix make the cross she didn't see the name Bridget Kelly on the paper at that time, and that to the best of her recollection the name Bridget Kelly wasn't there. Miss Koch testified that she saw Mrs. Kelly make the cross, that Attorney McGurl gave Mrs. Kelly a pen and he held her hand while she made the cross. She was asked what did McGurl say in her presence before she (Mrs. Kelly) put that cross on there, and she answered, "I don't remember he said anything to her." The witness also testified that so far as she remembered nothing was said before Mrs. Kelly affixed the cross.

The proponent's attorney then offered to prove by the testimony of the scrivener McGurl, that he affixed the name (Bridget Kelly) to the will after having read it to the testatrix, having prepared the will at her express directions and instructions; that she executed the same by the affixation of her cross in the presence of the two subscribing witnesses, Miss Wells and Miss Koch, after he had written her name at the end thereof at her express direction. The court then asked, Did he write the name in their presence? The attorney answered, "I wouldn't be able to say that at this time." Counsel for the contestant objected to the receipt of the will even though McGurl should testify according to the offer, contending that this would not meet the legal requirement of proof by two subscribing witnesses under the Wills Act. The objection was sustained.

The third section of the Wills Act of June 7, 1917, P. L. 403, provides: "If the testator be unable to sign his name for any reason other than the extremity of his last sickness, a will to which his name is subscribed, in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do, in which case the mark or cross shall not be required, shall be as valid as though he had signed his name thereto: Provided, that such will shall be proved

by the oaths or affirmations of two or more competent witnesses."

The court instructed the jury before which the issue was tried to find that the writing in question was not the will of Bridget Kelly. In this there is no error. There was a total want of proof that the name of Bridget Kelly had been subscribed to the will in her presence and by her direction and authority. The evidence received and the evidence offered taken together do not measure up to the standard or proof required by the section quoted.

A paper in form of a will and purporting to be a will is not a will until it is legally assented to by the person whose will it purports to be. A testator unable to sign his name (unless his inability to sign his name arises from the extremity of his last sickness: see section 2 of the Wills Act of 1917, and Wilson's Est., 88 Pa. Superior Ct. 556) can register his assent to the paper purporting to be his will only by the method prescribed by the third section of the Wills Act, supra. That method is this: First, his or her name must be subscribed to the will in his or her presence and by his or her direction and authority. Second, after this is done, he or she must make his or her mark or cross at the appropriate place in the signature.

"A mark for a name or signature is the sign of a cross made in a little space left between the Christian name and surname, and the word 'his' is usually written above the mark and the word 'mark' below it": 2 Blackstone Com. 305. The making of a cross between the Christian name and the surname and the labelling of it as indicated by Blackstone is, when properly proved, accepted by immemorial usage as evidence that the maker of the cross adopted the signature as his own and assented to the document to which his signature was subscribed. Under the Pennsylvania Wills Act, the fact that a testator made his mark or cross in the signature subscribed to a paper purporting to be his will, must be

proved by two or more competent sworn or affirmed witnesses.

The testator's direction and authority to another to sign the former's name to a will may be either express or implied: Novicki v. O'Mara, 280 Pa. 411.

"When implied authority to sign the alleged testator's name is relied on and the implication must arise solely from the fact that the signing was in his presence, then it must appear that he saw his name placed on the document or was in a position to observe the performance of that act. Of course, it must appear also that he knew the nature of the document signed in his name when he placed his mark thereon": Hughes's Est., 286 Pa. 466.

The proof required by law of the testatrix's assent to the paper purporting to be her will was not present or proffered in this case.

The judgment is affirmed.