## Zoltek's Estate

*Philip Dorfman,* for exceptant.

*Matthew Randall* and *V. E. Balukiewicz,* contra.

LAMORELLE, P. J., April 30, 1935.—In the early part of the year 1933, Josef Zoltek and Katarzyna, his wife, owning all of their property, real and personal, as joint tenants with right of survivorship, decided that the husband, who was then an invalid, should make a will.

They accordingly sent for a friend, Michael Bedmarek, engaged in the real estate business, whom they had known intimately for many years. In making known their wishes, Bedmarek explained that because of the way the property was held the husband's will would not effectuate their intention, in that if the husband died first his wife would take in any event, and his will as to others would be a nullity. He suggested that each make a will so that the eldest son, Anthony, whom they desired to benefit in a greater degree than their other children, would ultimately take irrespective of which of them died first. They thereupon agreed to the making of two wills exactly alike, save as to the name of testator and testatrix, and the scrivener took notes of the character of their property, as well as to how they wished to dispose thereof. Two wills were so prepared. One will was read to them by Bedmarek, that of the husband, who was at the time sick abed, the wife being up and about and attending the husband. The wills were typed in English and as Bedmarek read he translated into Polish, and "they were both satisfied." In fact, Mrs. Zoltek said she was satisfied with the will and wanted it signed. The husband signed, and his will (which has been offered in evidence and is part of the record) was witnessed. Bed-

marek made the mark to the wife's will: she was illiterate and did not know how to write, so she touched the end of the penholder and he affixed her name as well as the word "her" and the word "mark". The same witnesses acted in each case.

The date, like the will itself, is typewritten and had already been filled in by the scrivener, and though the actual date of execution may be questioned, this is of no particular moment, as no charitable bequests are made.

The husband predeceased the wife.

She died May 3, 1934, a year and some months after the date of her will.

This will was probated on May 15, 1934. At the time Jan Piatk and John Malek both swore that as subscribing witnesses to the "last will dated Feb. 22, 1933, of Katarzyna Zoltek" they were present and did see and hear Katarzyna Zoltek, deceased, the testatrix therein named, make her mark, seal, publish and declare the same as and for her last will and testament, and also "the name of testatrix having been subscribed in her presence, and by her direction and authority."

The estate is valued at about $450 personal property and $7,200 realty, less encumbrances of $600. The inventory and appraisement is not before us, nor have we any record of the debts. Anthony Zoltek, a son, is given the estate, subject to his paying the other children $1,650, all told. At the time of the execution of the two wills there were six children, two of them daughters. They all survived their mother.

A married daughter, Valeryja Rydzik, appeals from the action of the register in probating the will and granting letters. None of the other children join in her petition, nor do they answer, though duly served with citation. Their attitude is therefore not a matter of record.

This daughter, in her petition, alleges and states that she "expects" to be able to prove that at the time of the execution of "said writing", meaning the will, the physical condition of her mother was impaired by sickness and infirmity; that she was not a person of sound mind; that the will was procured by undue influence, duress and constraint by Anthony Zoltek; and that the writing was never in fact signed by her mother. She also alleges that another will was made by her mother in April, 1933, in longhand; and finally, that the will (as probated) is a forgery, etc., etc. When the case came on for a hearing, however, she offered no testimony whatever in support of her many allegations. Llewellyn's Estate, 296 Pa. 74, would seem to be in point. Her only witness was a handwriting expert whose testimony is negligible. On the other hand three witnesses testified to the physical condition of testatrix, and no one then questioned her mentality. The husband was sick and she was attending him. Counsel for the daughter, after hearing the testimony, withdrew all claims, and for the first time contended that as the mark was made before the name was appended, section 3 of the Wills Act of June 7, 1917, P. L. 403, had not been complied with. Nowhere in his petition did he so allege, and the hearing judge might well have dismissed his petition on this ground alone. However, the hearing judge passed upon the merit of the case and upheld the will. And that brings us to the crux of the case, for admittedly the mark was made before the name was written, and that, and that alone, is the one and only question before us.

It has always been our thought that since the Wills Act of 1917, it is a matter of no legal moment whether the name was first attached and the mark made afterwards, or vice versa, or whether they were done at one and the same time, as a scrivener might well write "John X Smith" and then with an extra flourish and a turning back of his pen interpolate the words "his mark".

Section 3 of the Wills Act was but intended to clarify the law: so says Judge Gest. See notes to Commissioners' Report at page 57.

The Act of January 27, 1848, P. L. 16, provided that a will should be valid if testator's name was subscribed by his direction and authority or to which he had made his mark.

The later act provides that his name should be subscribed in his presence, and to which he should make his mark unless unable to do so, and "That such will shall be proved by the oaths or affirmations of two or more competent witnesses."

There is nothing in the act requiring the mark to be made last, or for that matter first. The test is the acquiescence of the testator, and this may be by express direction and authority, or it may be implied. What is said by the one primarily responsible for this act, Judge Gest, in Reilly's Estate, 9 D. & C. 538, 539, is directly in point:

"After the will was written, the witness read the will to the testator, who said it was all right and inquired if he should sign his full name, but Wene told him that he might make a cross if he wanted to, which the testator did with a fountain-pen handed him by Wene, and Wene then wrote the testator's name and put a circle around the cross-mark." Later after procuring two witnesses, the scrivener brought them to the hospital and (still quoting Judge Gest) "The notary then read the will to the testator and asked him to identify his cross-mark, which he did, and then the notary instructed the two witnesses to sign as such, which they did, in the presence of the testator, and he afterwards added the acknowledgment under his seal."

Exceptions to the finding of the hearing judge were dismissed by the orphans' court in a per curiam opinion; upon appeal the Superior Court sustained the will: 92 Pa. Superior Ct. 314; and afterwards an allocatur was refused by the Supreme Court.

In Picconi's Estate, 4 D. & C. 245, 247, the same judge said:

"It is clear that the name of the testator was subscribed in the room where he was lying in bed, and we do not think it important that his name was written after he had made his mark; in other words, the order is immaterial in which the mark is affixed and the name subscribed. The two requisites are connected in the statute merely by the conjunction 'and,' but there is nothing to indicate which should be made first in order of time, and where two things are necessary to complete a transaction, it is unavoidable that, in the phraseology of the statute prescribing both, one must of necessity be named before the other." Also see Novicki v. O'Mara, 280 Pa. 411; Girard Trust Co., Exec., v. Page et al., 282 Pa. 174; and Hughes's Estate, 286 Pa. 466.

In the instant case petitioner bases his whole contention upon Kelly's Estate, 306 Pa. 551, wherein it is true that while Mr. Justice Maxey, speaking for the Supreme Court, did say (at page 555) in calling attention to the proper way of executing a will under section 3 of the Wills Act: "That method is this: First, his or her name must be subscribed to the will in his or her presence and by his or her direction and authority. Second, after this is done, he or she must make his or her mark or cross at the appropriate place in the signature"; that this was outside the only question the court was called upon to consider is clear.

We submit, however, that the only question before the court in that case was not the order in which certain things were done, but whether there was sufficient testimony showing that the name of testatrix had been affixed by her direction and authority.

Our intensive examination of the paperbooks shows that this latter was the one and only matter in dispute, the judge in the lower court charging the jury thus:

"These witnesses don't show that at the time that the will was made the name of this lady was there. If her name had been there, there would be sufficient to submit to you to determine whether or not her name was not authorized, because if her name was there, and she put her mark at the place so indicated, and where found, between the Christian name and the surname, why, the presumption would be that she authorized it to be done; she at least ratified when she put her mark there, if that were the case.

"But the difficulty here is that neither of the witnesses testified that her name was there at the time the mark was made or that her name was written there after she had made her mark and by her authority and direction."

A verdict was accordingly directed against the probate.

Nor do the assignments of error in Kelly's Estate, supra, raise the question. Matters not properly before the court will not be considered. See Coyne v. John Gibbons Coal Co., 314 Pa. 502.

Another point made by petitioner in the instant case is that there is a discrepancy in the testimony of the witness, Jan Piatk, who says that the testatrix unaided marked the "X", and from this it is argued that there must have been another will. The answer is obvious: Twice this witness has identified his signature to the will in question; twice made oath thereto, once before the register and again before the hearing judge; he has never even intimated that he was twice at the Zoltek house and that on two occasions he witnessed a will of the testatrix. Is it not more reasonable and charitable to conclude that after 2 years his memory is at fault, and what he really saw was that Mrs. Zoltek placed her hand or finger on the pen?

Even if, however, he may thus disqualify himself as a witness, there are still two witnesses, and nowhere in the act is it affirmatively stated that the witnesses must be subscribing ones. The wording of the act is "Provided, That such will shall be proved by the oaths or affirmations of two or more competent witnesses"; and the competency of the scrivener, Bedmarek, is not questioned.

And, finally, taking into consideration that the father and mother made similar wills, each providing especially for what may be termed a favorite child (the others being by no means ignored), the fact that the father should be the first to die ought not deprive the son of his rights on what may be considered at best a technicality. We call attention to this with due respect to what has been said in Kelly's Estate, supra, in event that such opinion is intended as a guide and as outlining the policy of the court of last resort. Many wills are prepared by those not learned in the law, and almost universally the "X" is considered by them as the signature of an illiterate testator and adding the name as corroborative of testator's "X", so that the "X" may be identified as testator's, and the mark is as a rule made first.

We therefore enter this decree:

And now, April 30, 1935, all exceptions are dismissed and the record is remitted to the register.