### Bobbitt's Estate

660

S. Y. *Rossiter* and *Thomas E. Doyle*, for contestants.

*Bernard T. Foley* and *William W. Knox*, for proponent.

WAITE, P. J., March 27, 1937.—This matter is before the court on appeal from the register and a citation awarded upon a petition of the contestants to have the matter certified in the Court of Common Pleas of Erie County for the trial of the following questions of fact: (1) Whether or not at the time of the execution of said writing the decedent was a person of sound mind; (2) whether or not the said writing was procured by undue influence, duress, constraint, and forgery practiced upon the decedent by Mattie Bobbitt and others; (3) whether or not the said writing is the last will and testament of the said decedent.

As an additional reason, it is urged on behalf of the contestants that this will was not properly executed. After hearing the testimony of the scrivener and the other subscribing witness to the alleged will and that of the only other witness present at the time, showing the manner of its execution, we are bound to agree with this contention.

Thomas Bobbitt, Sr., died June 13, 1936. On June 29, 1936, a writing dated February . ., 1936, and alleged to be his last will and testament was offered and probated in the office of the register of wills as his last will and testament. The alleged will does not show the date of the month on which it was signed, but the testimony taken at the hearing shows that the date was on or about the third day of February, 1936, more than four months before de-

cedent's death. Decedent was not therefore in "the extremity of his last sickness" (see Prescott's Estate, 15 Erie 252, 260), and being signed by a mark its execution is governed by section 3 of the Wills Act of June 7, 1917, P. L. 403, which is as follows:

"Section 3. If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do,—in which case the mark or cross shall not be required,—shall be as valid as though he had signed his name thereto: Provided, That such will shall be proved by the oaths or affirmations of two or more competent witnesses."

By the plain words of the above-quoted section, when a testator's name is subscribed by another, it must be done in his presence and by his direction and authority, and his name must be subscribed before the making of the mark.

The testimony of Mr. Foley, the scrivener, shows that the mark was placed upon the paper by testator and that thereafter decedent's name, Thomas Bobbitt, was subscribed by the scrivener. The testimony of Dorothy Youngdale, one of the subscribing witnesses, is to the same effect. Matilda Lyons, the other subscribing witness, was unable to state definitely whether the making of the mark was before or after the writing of the name, Thomas Bobbitt, upon the alleged will. In view of all this testimony we are bound to conclude that the making of the mark preceded the subscribing of decedent's name. The making of the mark therefore could not be an adoption by the testator of a signature which did not then exist, and there is no testimony of anything said or done by the testator showing an acknowledgment or adoption of the signature subsequently subscribed; nor is there any other testimony showing that the name, Thomas Bobbitt, appearing upon the will was subscribed by decedent's direction or authority. We must therefore conclude that the will was

not executed as required by the above-quoted section of the Wills Act.

Passing upon the execution of a will under this particular section, in Kelly's Estate, 306 Pa. 551, at pages 555-556, Justice Maxey delivering the opinion of the court said:

"A paper in form of a will and purporting to be a will is not a will until it is legally assented to by the person whose will it purports to be. A testator unable to sign his name (unless his inability to sign his name arises from the extremity of his last sickness: see section 2 of the Wills Act of 1917, and Wilson's Est., 88 Pa. Superior Ct. 556) can register his assent to the paper purporting to be his will only by the method prescribed by the third section of the Wills Act, supra. That method is this: First, his or her name must be subscribed to the will in his or her presence and by his or her direction and authority. Second, after this is done, he or she must make his or her mark or cross at the appropriate place in the signature.

" 'A mark for a name or signature is the sign of a cross made in a little space left between the Christian name and surname, and the word "his" is usually written above the mark and the word "mark" below it': 2 Blackstone Com. 305. The making of a cross between the Christian name and the surname and the labelling of it as indicated by Blackstone is, when properly proved, accepted by immemorial usage as evidence that the maker of the cross adopted the signature as his own and assented to the document to which his signature was subscribed. Under the Pennsylvania Wills Act, the fact that a testator made his mark or cross in the signature subscribed to a paper purporting to be his will, must be proved by two or more competent sworn or affirmed witnesses.

"The testator's direction and authority to another to sign the former's name to a will may be either express or implied: Novicki v. O'Mara, 280 Pa. 411.

" 'When implied authority to sign the alleged testator's name is relied on and the implication must arise solely from the fact that the signing was in his presence, then it must appear that he saw his name placed on the document or was in a position to observe the performance of that act. Of course, it must appear also that he knew the nature of the document signed in his name when he placed his mark thereon': Hughes's Est., 286 Pa. 466."

See also Prescott's Estate, supra.

Novicki v. O'Mara, 280 Pa. 411, Francis' Estate, 299 Pa. 398, and Reilly's Estate, 92 Pa. Superior Ct. 314, are cited and relied upon by the proponent. In the first two cases the signature was subscribed before the mark was made and in the latter there was a ratification by verbal acknowledgment after the mark was made. Miller's Estate, 288 Pa. 476, is not in point.

We have carefully read the opinion of the Orphans' Court of Philadelphia County in Zoltek's Estate, 22 D. & C. 721, cited by attorneys for proponent, commenting upon the opinion of Justice Maxey in Kelly's Estate, supra. That case does not, of course, overrule the opinion of the Supreme Court. But even if the point specifically decided in Kelly's Estate was that the signature was not subscribed by testator's authority and direction and not as to the sequence of the subscribing of testator's name and the placing of the mark, it would still govern the case at bar, since, as we have already shown, there was neither authorization nor direction to subscribe testator's name in the instant case as there was in Zoltek's Estate and upon which fact the case seems to have been decided.

When the mark is made by the testator after his name is subscribed, that in itself is some evidence of ratification of the signature as written.

We are therefore bound to conclude that this alleged will was not properly executed and the probate thereof must be set aside. Having reached this conclusion it is unnecessary to consider the questions as to undue influence, of which there is no testimony, and lack of testamentary

capacity, which, under the testimony produced, may be doubtful.

## Order

Now, to wit, March 27, 1937, the apeal is sustained and the probate of the will is set aside.

### Opinion sur exceptions

WAITE, P. J., September 9, 1937.—This matter is now before us on exceptions to the opinion and order of the court dated March 27, 1937, setting aside the probate of the alleged will of the decedent because of improper execution. The reasons set forth by the contestants in the appeal from the register of wills were forgery and undue influence. At the hearing on the appeal it was shown that the will was not executed as provided for in section 3 of the Wills Act of June 7, 1917, P. L. 403, it having been signed by a mark placed upon the writing before testator's name was subscribed thereto and there being nothing in the testimony to show an adoption or ratification of the signature by the decedent.

After the above order was made the proponent was on petition permitted to offer additional testimony as to the execution of the alleged will. It is now strenuously urged by proponent that inasmuch as the appeal from the register did not allege improper execution, that question was not before the court and was therefore improperly passed upon in the opinion and order. With this contention we cannot agree. On appeal from the probate of the will before the register to the orphans' court the matter is heard de novo: See section 20 (e), Orphans' Court Act of June 7, 1917, P. L. 363, and Simcox's Estate, 1 Dist. R. 653. It is always incumbent upon a proponent to show execution as provided in section 3 of the Wills Act of 1917, P. L. 403. No writing is properly before the court as a will until its proper execution is proven. Whether or not an alleged will has been properly executed is therefore always an issue on appeal from the register to the orphans' court.

At the hearing on the appeal the testimony of B. T. Foley, the scrivener, on direct examination on behalf of proponent, was to the effect that the mark was placed on the will and the decedent's name afterwards signed thereto by the scrivener without any direction by the testator, nor did the scrivener testify to any fact that could be construed to be a ratification or adoption thereof by the decedent. The testimony of Dorothy Youngdale, a stenographer in the scrivener's office and one of the witnesses to the will, is to the same effect. The testimony of Matilda Lyons, the other subscribing witness, is conflicting. At one time she testified that testator's name was subscribed to the will by the scrivener before the mark was made, and another time that the mark was made before the name was signed. She likewise did not testify to any act or word of the decedent that could be construed to be an adoption or ratification of the signature of the decedent.

At the subsequent hearing granted on request of the proponent, both the scrivener and Dorothy Youngdale, while still testifying that the signature was placed on the will after the mark, each testified to acts and words of the decedent which might be construed as an adoption or ratification of the signature, and which was wholly lacking in their former testimony and was apparently given with a studied effort to show ratification or adoption for the purpose of bringing the facts within the ruling of the court in Zoltek's Estate, 22 D. & C. 721. The testimony of Matilda Lyons at the subsequent hearing contradicts that of both the scrivener and Dorothy Youngdale, as to the sequence of placing decedent's name and the mark upon the writing. In conflict with her former testimony, she too testifies to both acts and words of decedent tending to show a ratification and adoption of the mark as decedent's signature. The above-named witnesses were the only persons present when the writing was signed. Inasmuch as all three of the witnesses testified freely both in direct and in cross-examination at the first hearing be-

fore the orphans' court, their subsequent testimony bearing on the same subject should not in our opinion, in view of the contradictions therein, be permitted to overcome the testimony given at the prior hearing. Especially so since there are no other witnesses to the transaction who can be produced and proponent has already had her day in court.

But even if we concede this testimony taken at the rehearing to be competent, credible and admissible, it still would not bring the case within the rule laid down in Kelly's Estate, 306 Pa. 551, 556, quoted in our former opinion.

### Order

Now, to wit, September 9, 1937, for the reasons herein set forth the exceptions are dismissed and the order of March 27, 1937, setting aside the probate of the will is made absolute.