## Cassell's Estate.

Argued October 20, 1938. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Milford J. Meyer,* with him *Samuel Goldstock,* for appellant.

*Richard S. MacFarland,* with him *Leo MacFarland,* for appellee.

PER CURIAM, December 20, 1938:

These appeals are from the decree of the Orphans' Court of Philadelphia County, refusing to grant an issue devisavit vel non to determine whether or not the name of the decedent had been signed to the draft of the will by her attorney before she made her mark thereto.

Appellants appealed from the order of the Register of Wills admitting the questioned document to probate

as the last will and testament of Elizabeth Cassell. Several grounds of appeal were assigned but, on the hearing, the only one relied upon was that the evidence did not establish, by the testimony of two witnesses, that the testatrix's signature was affixed to the writing by her attorney before she made her mark.

The attorney had drawn a typewritten will, upon his client's instructions, leaving her entire estate to a niece, and disregarding her two sisters and four other nieces and nephews. On the morning of November 21, 1936, the attorney accompanied by his son, also a lawyer, visited the hospital room where Miss Cassell was confined to her bed, and told her that he had prepared the will as she had directed. He told her that it gave everything to her niece, Marie. He did not read it to her, nor could he say whether she read it. She had it in her hand and looked at it. She attempted to sign it but was unable to do so. The attorney then suggested that she should make her mark and he would write her name. The evidence of the two witnesses did not establish that her name was signed to the paper by the attorney before she made her mark. Nothing was said by or to the decedent after she made her mark. She did not die until January 16, 1937. The will was admitted to probate by the Register of Wills on January 19, 1937 and appeals therefrom were taken by the present appellants on October 14, 1937 and the required security entered.

The appellants rely upon the language of the Supreme Court in *Kelly's Est.*, 306 Pa. 551, 160 A. 454, where in discussing the third section of the Wills Act of 1917 (June 7, 1917, P. L. 403)[1]—which is the section here

---

[1] "If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do,—in which case the mark or cross shall not be required,—shall be such will shall be proved by the oaths or affirmations of two or more competent witnesses."

involved—the opinion writer, Mr. Justice MAXEY, said (p. 555) : "A paper in form of a will and purporting to be a will is not a will until it is legally assented to by the person whose will it purports to be. A testator unable to sign his name (unless his inability to sign his name arises from the extremity of his last sickness: see section 2 of the Wills Act of 1917, and *Wilson's Est.*, 88 Pa. Superior Ct. 556) can register his assent to the paper purporting to be his will only by the method prescribed by the third section of the Wills Act, supra. That method is this: First, his or her name must be subscribed to the will in his or her presence and by his or her direction and authority. Second, after this is done, he or she must make his or her mark or cross at the appropriate place in the signature. 'A mark for a name or signature is the sign of a cross made in a little space left between the Christian name and surname, and the word "his" is usually written above the mark and the word "mark" below it': 2 Blackstone Com. 305. The making of a cross between the Christian name and the surname and the labelling of it as indicated by Blackstone is, when properly proved, accepted by immemorial usage as evidence that the maker of the cross adopted the signature as his own and assented to the document to which his signature was subscribed. Under the Pennsylvania Wills Act, the fact that a testator made his mark or cross in the signature subscribed to a paper purporting to be his will, must be proved by two or more competent sworn or affirmed witnesses. The testator's direction and authority to another to sign the former's name to a will may be either express or implied: *Novicki v. O'Mara,* 280 Pa. 411."

The Orphans' Court of Philadelphia County has refused to follow the construction placed upon the third section of the Wills Act by the Supreme Court in *Kelly's Estate,* supra, as an authoritative ruling that

the name of the intended testator must be subscribed to the proposed will before his or her mark is made, and has held that the order in which it is done is immaterial. See Judge LAMORELLE'S ruling in *Zoltek's Est.*, 22 D. & C. 721. The auditing judge in the present case, Judge BOLGER, frankly rejected the order fixed by the Supreme Court as of binding authority and sided with Judge LAMORELLE. The opinion of the court in banc, written by Judge LADNER, did not go so far, but refused to apply the language of the Supreme Court except to cases where the authority to sign the name was only implied.

To us, the language of the Supreme Court in *Kelly's Estate* is clear, definite and unmistakable and specifically applies to *all* cases falling under the third section of the Wills Act; and in our opinion it is fully warranted by the wording of that section. The expression, "A will to which his name is subscribed, in his presence, by his direction and authority, and to which he makes his mark or cross," reasonably means that the testator makes his mark or cross to a will to which his name *has been* subscribed, in his presence, by his direction and authority. The legislature had the right so to provide. It is a salutary provision, preventive of fraud and imposition. A testator, who can read, knows when he makes his mark that it is intended for his signature and his alone. And if he cannot read he knows that his mark is affixed to a signature already made and not subject to change or alteration.

The language of the Supreme Court in *Kelly's Estate*, supra, was previously expressed, though not so definitely, in *Hughes' Est.*, 286 Pa. 466, 471, 133 A. 645, where Chief Justice MOSCHZISKER, speaking for the court, said: "In *Girard Trust Co., v. Page*, 282 Pa. 174, 176-7, the will was unsigned by testatrix, because of the impaired physical condition of her hands. The contention was that the evidence failed to show her inability to sign,—not as here, that it failed to show the paper to

have been signed in her presence. We there said that, under section 3 of the Act of 1917, an express request of another to sign testator's name was unnecessary, since such 'authority may be inferred from the fact that testator saw the name written and then signified his approval of the act by placing his mark under the signature.' The above quotation expresses the correct rule as to the facts essential to bring such a case as the present within the third section of the Act of 1917, one being that, when implied authority to sign the alleged testator's name is relied on and the implication must arise, as here, solely from the fact that the signing was in his presence, then it must appear that he saw his name placed on the document or was in a position to observe the performance of that act. *Of course, it must appear also that he knew the nature of the document signed in his name when he placed his mark thereon."* [Italics supplied.] The italicized portion of this quotation clearly implies that the testator's name must be signed to the document before he placed his mark thereon, for it speaks of "the document signed in his name *when* he placed his mark thereon."

In our opinion the language of the Supreme Court in *Kelly's Estate* is too clear, definite and all inclusive to be set aside or disregarded by a lower court. If it is to be qualified or modified in any way it must be by the Supreme Court itself.

The second and third assignments of error are sustained. The decree is reversed and the record is remitted to the court below with directions to grant an issue devisavit vel non to determine whether the paper writing dated November 21, 1936, offered as the will of the deceased was properly executed in accordance with the Wills Act of 1917.

Costs to await the final result.