**Borromeo  Estate**

*MacElree, Platt & Marrone,* for appellant.
*Griffith, Kurtz & Harvey,* for caveators.

MacElree, P. J., January 25, 1960.— . . . On a Sunday in December of 1958, decedent, Louis Borromeo, together with his daughter, Annamarie Messantonio, called at the home of Samuel Lichtenfeld, Esq., then a member of the bar of Chester County.

The said Samuel Lichtenfeld, now a law judge of the Court of Common Pleas of Chester County, had previously represented this defendant for several years.

Decedent, an Italian, spoke some English but not very well.

Pursuant to instructions, in part from decedent and in part through his daughter, acting as an interpreter, Samuel Lichtenfeld, Esq., prepared the written instrument in question.

The written instrument was explained to decedent by Mr. Lichtenfeld and decedent's daughter, Annamarie Messantonio.

The text of the will was in the handwriting of Samuel Lichtenfeld and the signature "Louis Borromeo" was subscribed by Samuel Lichtenfeld in the presence of decedent, as were also the two words "my" and "mark."

Decedent was unable to sign his name, being unable to write.

Decedent at that time did not make his mark on said instrument.

It was explained to decedent that his mark had to be placed between the two words "my" and "mark."

At said time decedent was instructed how his mark should be made when he wished to complete the execution of the written instrument.

Decedent was instructed that at the time he placed his mark upon the written instrument it must be done in the presence of two witnesses.

On the following Tuesday decedent inquired of his

daughter, Annamarie Messantonio: "Where is that paper? I am going to sign it."

At the same time decedent declared: "I need somebody to witness it."

The instrument was thereupon taken out of a safe where it had been lodged and decedent, seated at a desk, placed his "x" on the instrument and two witnesses signed their names to the will in the presence of decedent.

Joseph Feliciani, a brother-in-law of Annamarie Messantonio, witnessed the decedent's mark in the presence of decedent, as did Norman Freeman, an employe at the cleaning establishment of Mr. and Mrs. Messantonio.

At the time that decedent's mark was made in the presence of two witnesses the will was read to decedent . . .

The only ground for refusing probate urged upon the register of wills was the following, as stated in the opinion of his solicitor, page 5:

"It is not questioned but that the decedent in this case did affix his mark, that it was done in the presence of the two persons who signed as witnesses to the mark and that all were present at the same time. There is also no question but that the subscription of the decedent's name was in fact in his presence by Mr. Lichtenféld some two or at most three days before the time that the mark was placed on the instrument. The narrow question, therefore is as to whether this subscription of the decedent's name is such as is contemplated by Section 2 of the Wills Act of 1947, above quoted."

The objectants' answer to the petition for citation sur appeal merely denies that the proffered instrument is a valid will "for the reason that said writing was not executed in accordance with the provisions of Wills

Act of 1947 for the reasons proved at the hearing before the Register of Wills on the Caveat."

There can be no dispute that the manner in which this document was executed complies with the express language of the Wills Act of April 24, 1947, P. L. 89, in that everything required to be done was done. The learned counsel to the register, however, read into the language of the act the further qualifications that "the subscripition of the name should be at or about the same time that the mark was placed thereon in attestation of the execution of the instrument. In other words, a purpose on the part of the maker that it be so affixed 'animo testamentory'."

The earlier acts on the subject were as follows:

Wills Act of April 8, 1833, P. L. 249:

"Section 6. That every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his last sicknes, shall be signed by him at the end thereof, or by some person in his presence, and by his express direction, and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses, otherwise such will shall be of no effect."

Act of January 27, 1848, P. L. 16:

"Be it enacted . . . that every last will and testament heretofore made, or hereafter to be made, excepting such as may have been finally adjudicated prior to the passage of this act, to which the testator's name is subscribed by his direction and authority, or to which the testator hath made his mark or cross, shall be deemed and taken to be valid in all respects: Provided, The other requisites, under existing laws, are complied with."

As pointed out in appellant's brief, from a very thorough discussion in Knox's Estate, 131 Pa. 220 (1890), it appears that the original Act of 1833 was

founded on the English statute of frauds, 29 Car. II, following its language closely but adding the requirements that a will be signed "at the end thereof." Under the English act signing by mark or initials had been held sufficient, but contrary judicial constructions of the 1833 statute necessitated the act of 1848, expressly permitting signature by mark, "provided the other requisites under existing laws are complied with": Act of January 27, 1848, P. L. 16. There was no express requirement as to the subscription of testator's name.

As noted in Bregy, Intestate, Wills and Estates Acts of 1947, pp. 2202, et seq., conflicting interpretations under the two early Wills Acts finally led in 1917 to a notably unsuccessful attempt to clarify the situation. Except for persons in the extremity of last illness the Wills Act of June 7, 1917, P. L. 403, provided in section 3:

"If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do, —in which case the mark or cross shall not be required,—shall be as valid as though he had signed his name thereto."

It is apparent that this section confusingly attempted to cover two entirely different situations, that of testator unable to write but able to make his mark, and that of testator unable to do either. In the latter case subscription of testator's name in his presence and by his direction and authority is clearly essential if there is to be any assurance of testamentary intent. For the first time this requirement was imposed also where signature was to be by mark, for reasons not at all clear. As Bregy states, despite "brave efforts" of the courts, the 1917 act introduced new problems without solving the old. Although none of the decisions

under that act have direct bearing upon our problem, one line of authority may be mentioned. It was held immaterial whether the mark or the subscription of name came first: Cassell's Estate, 334 Pa. 381 (1939); Picconi's Estate, 4 D. & C. 245 (1924).

The Wills Act of 1947 provides as follows:

"If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, He makes his mark in the presence of two witnesses who sign their names to the will in his presence": Wills Act of 1947, sec. 2, 20 PS §180.2.

In the Wills Act of 1947 the reason for disability becomes irrelevant and the two distinct situations just referred to finally receive separate and appropriate treatment. Testator unable to make even a mark must expressly direct the subscription of his name in his presence and must declare the document to be his will in the presence of two subscribing witnesses. Testator who intends to sign by mark must do so in the presence of two subscribing witnesses, but his name need only be subscribed in his presence either before or afterwards.

The emphasis has once again been placed squarely upon the making of the mark as the operative expression of testamentary intent. This is consistent not only with Pennsylvania law prior to the 1917 act but also with the overwhelming weight of authority in other jurisdictions.

In Knox's Estate, 131 Pa. 220, 230 (1890), upholding a will signed by first name only, the court discussed at length the meaning of "signature":

"Looking beyond the decisions to the general use of language, what is understood by signing, and signa-

ture? Webster defines to sign as 'to affix a signature to; to ratify by hand or seal; to subscribe in one's own handwriting;' and signature as 'a sign, stamp, or mark impressed; . . . especially the name of any person written with his own hand, employed to signify that the writing which precedes accords with his wishes or intentions; a sign manual.' All the definitions include a mark, and no dictionary limits a signature to a written name."

So also in Plate's Estate, 148 Pa. 55, 59 (1892), where testator began to sign his name, made only one stroke and said "I can't sign now," the court made the following pertinent comment:

"The Act of 1848 makes all wills valid 'to which the testator hath made his mark or cross . . . provided the other requisites under existing laws are complied with.' . . . The statute in authorizing the execution of a will by a mark can only mean a *mark made with the intent to execute the will thereby.*" . . . (Italics supplied.)

This court adopts the suggestion of counsel for appellant that these authorities point up something temporarily obscured, perhaps, by the 1917 act with its requirement of subscription by authority and direction. The making of a mark upon a will, with proper intent and formality, constitutes signing or execution; it is from this alone, not from the writing of testator's name, that testamentary intent is to be found. As our Supreme Court has said, adopting an unduly restrictive definition of Blackstone, but one with which the facts of this case fully comply:

"The making of a cross between the Christian name and the surname and the labelling of it as indicated by Blackstone is, when properly proved, accepted by immemorial usage as evidence that the maker of the cross adopted the signature as his own and *assented to the document to which his signature was sub-*

*scribed.*" Kelly's Estate, 306 Pa. 551, 555 (1932). (Italics supplied.)

It has been submitted that the learned solicitor to the register was unnecessarily troubled by the time lapse in the instant case between Judge Lichtenfeld's subscription of decedent's name and decedent's act of making his mark in the presence of subscribing witnesses. As his opinion states, page 10:

"(i)t is the placing of the mark which is really the testamentary act. . . ." So long as testator's name has been subscribed to the document in his presence, he may assent to the signature and make the paper his will whenever he makes his mark with appropriate formality. His is the privilege of any testator to reflect upon a will prepared for his approval before deciding to execute it.

The distinction between the 1917 and 1947 Wills Acts with respect to subscription of testator's name is reflected in Walkiewicz Will, 392 Pa. 310 (1958), the only appellate decision yet reported dealing with the sufficiency of execution by mark under section 2.2 of the new act. Neither of the subscribing witnesses had seen the name of testatrix subscribed. The principal beneficiary, however, testified that he had signed her name to the will in her presence before she made her mark, and this was corroborated by his wife. An appeal was taken from probate on the ground that proof of subscription of the name did not come from the two subscribing witnesses. Under the 1917 act such proof would probably have been inadequate. Compare Kelly's Estate, 306 Pa. 551 (1932), where testimony by one witness regarding subscription was rejected, and James' Estate, 329 Pa. 273, 275-6 (1938), where Mr. Justice Stern reiterated the necessity of two witnesses proving the subscription and implied that the same witnesses would have to prove the mark.

Walkiewicz Will, supra, expressly holds that different witnesses may prove the subscribing and the making of testator's mark. After quoting section 2 of the 1947 act the court states, on page 312:

"It will be observed that the act requires that the testator's mark be made in the presence of two witnesses who in turn are required to sign their names to the will in the testator's presence. However, as to the subscribing of the testator's name, the act provides only that this be done in testator's presence either before or after he makes his mark. *The act does not require that the signing of the testator's name to the will in his presence be proved in any specified manner.* See Comment, Joint State Government Commission, 20 PS §180.2." (Italics supplied.)

There is nothing in this opinion, the act or the official comment to suggest that the length of the interval between subscription and execution is material.

In the instant case two witnesses proved, as in the Walkiewicz case, that testator's name was put to the will in his presence. They went even further, showing that it was specifically pointed out to him and that he was told precisely where he should make his mark when he determined to do so. Subsequent execution by mark was proved by one of these witnesses, *plus* the two subscribing witnesses, as in Walkiewicz, plus a fourth witness present at the time. . . .

### Decree

And now, to wit, January 25, 1960, the appeal of Annamarie Messantonio is sustained.

The decree of Thomas A. Pitt, then Register of Wills of Chester County, entered October 14, 1959, is reversed and J. Morris Jackson, Register of Wills of Chester County, is hereby directed to probate as and for the last will and testament of Louis Borromeo, deceased, the paper writing being the subject matter of this appeal.